Good morning. May it please the Court, Joe Seguenza for Petitioner this morning. The central issue in this immigration asylum appeal is whether substantial evidence supports the IJ's adverse credibility findings based on stated- I was kind of impressed that there was this confusion about whether he's staying with his sister or whether he doesn't have a sister, but the person is like a sister to him. His sister turns out to be back in India. He described the woman as his sister. And also, he didn't sound that much like a Sikh. He didn't have his bangle. He didn't know if he'd gone to the June 25 rally or not. And he didn't seem to know a lot about the AIA. And what was it, the 400th anniversary of CALSA, something like that? Of, I believe, the IJ or the government had questioned Petitioner about Basakite, which is- Why does it here with those things? Your Honor, we would submit that the stated inconsistencies in the IJ's findings were not inconsistencies at all. And assuming arguendo that they were deemed so, they were minor in nature, didn't go to the heart of the claim, and they didn't enhance the claim. For instance, Your Honor had referenced Petitioner's testimony about the sister. I believe he corrected himself, and it was more a cultural reference than a stated misrepresentation by Petitioner. In Indian culture, referring to someone as their sister or their aunt or uncle, even though they may not be biologically related, is a common occurrence. Aunt and uncle I think is a little different. Right. Sister is what he said. But I believe he did clarify for the IJ or the government that, in fact, she was not his sister, but he treated her as a sister, close family friend, if you will. Can I ask you something, Your Honor? Yes. I think the immigration judge felt that he was prepped for his first hearing and then forgot a lot of things for the second hearing. And is that true? Your Honor, well, he naturally was prepared by our office in anticipation of the hearing. But I believe the IJ went too far in stating that she believed that his testimony was, quote, memorized or overly rehearsed for the first hearing, and he wasn't as adequately prepared for the second hearing. I believe it's just more lapses in memory, temporary lapses in memory that would account for Petitioner's difficulties, if any, in relating events or dates to the court at the second hearing. Counsel, my father always used to say, tell the truth, then you have nothing to remember. It doesn't take so much preparation. And his change between the times concerns me. I don't see why it isn't substantial evidence of dishonesty. Your Honor, the IJ's stated findings on what she perceived as inconsistencies, even though she said it didn't involve dates or it wasn't overly concerned about dates, as Valerio has suggested is not important, they do center around dates. And because maybe Petitioner did not actually remember the date of his release, for instance, after his third arrest, even though he gave the correct date of his third arrest, he couldn't articulate a specific date when he was released, but he did say I was released three days later. What we have here essentially is a history exam. And unfortunately, it appears that the IJ has treated the conduct of this hearing as a history exam. That's not so off. If somebody were nonpolitical, I wouldn't expect them to know the difference between the Stalinists and the Trotskyites and the Lovestoneites. If someone had been political in the early part of the 20th century, I'd expect them to know who the Lovestoneites are and what the Trotskyite deviation is. Granted, Your Honor, to a certain extent. But here we're dealing with a Petitioner who, as with many asylum claimants from India, possesses little or no education. I believe in this case Petitioner had primary plus two years of secondary education. People from agrarian backgrounds, not we're looking at individual differences here, Your Honor, I would submit. And sending someone back to their home country, to their persecutors, simply because they did not know the date of the Saki Day, for instance, would seem unreasonable and unrealistic. We're dealing with real life, real people with little or no education. And Petitioner in this situation is, he may not be as knowledgeable as to 500 years of Sikh history, but it's understandable that he may not know arcane details about 500 years of Sikh history, but he was sympathetic to the cause. And that's what led to his involvement with AISSF and his subsequent three arrests, detention, and torture. And to reduce an asylum or removal hearing to a history exam, where credibility is judged by how many arcane details you may know about 500 years of Sikh history, does not seem realistic or reasonable. And we would submit that he has presented consistent, credible testimony. There are several areas in our brief where we've highlighted the perceived inconsistencies by the IJ. If the Court would like me to comment on one particular one, I'd be happy to. But here we have the heart of the claim is his three arrests, his detention, and his mistreatment on account of political opinion and religion. The IJ did not question that he was a Sikh. She did not question that. He did correct himself on several areas where he was confronted with inconsistencies on AIDS. When she's questioning credibility, it means she's questioning whether this is all made up. Yes. I'm sorry. I didn't follow you there. When the IJ rejects credibility, it means she's wondering whether this is all made up. Yes. I believe at one point the IJ stated, I don't know what to believe. Let me ask you this. Did she rely on demeanor? I mean, a finder of fact can really rely on demeanor. What did she mean there? I frankly was not able to follow that line of reasoning, Your Honor. My understanding of demeanor is body language. And there is nothing in the opinion where the IJ references specific body language that would lead her to an adverse credibility finding. Well, counsel, it's not just body language. It's the way questions are answered, whether some questions are answered readily and others are answered hesitantly. So it's not just body language. Granted, Your Honor, however, I don't think there's anything in the IJ's opinion that referenced that Petitioner was halting or evasive in his answers. He may have given an answer, and then on further questioning he may have corrected himself, but those are momentary lapses, especially with questioning on particular dates, especially dates on dates concerning Sikh history, for instance. I was just questioning your statement that it's only demeanor evidence and not the manner in which questions are answered that can be taken into account by the IJ. Yes, and I acknowledge Your Honor's statement that it includes more than that. But at the same time, on the other hand, rather, the IJ did not point to anything in the record that would show that Petitioner was halting or evasive or his body language belied his testimony. And I'll reserve if there are no more questions. Thank you. Thank you. Counsel. May it please the Court. I'm August Flengey with the Justice Department. I'm here on behalf of the Acting Attorney General. The immigration judge's adverse credibility finding here should be upheld because it's supported by several articulated, specific, and cogent reasons that are supported by the record. First, Gill's testimony included some key inaccuracies and inconsistencies. The central inaccuracy is that he did not know correctly the date when this Ali Akali Dalman political party building was destroyed, an event that he said he protested, and the result of that protest was the month and the year. He did.  Now, often dates are not significant, but here the IJ explained why this date was significant, because the building was destroyed on the 15th anniversary of probably the most kind of horrific political event in Sikh history, which was Operation Blue Star. And so, as the IJ explained, this revealed a much larger lack of knowledge about key Sikh political history. So I think in citing this, the IJ, and this is the words of this court in Villorio Lopez, he explained how the inaccuracy reflected on the credibility claims. He didn't know the date. Anyone who was involved in this organization would know that date because it was the destruction of a political party building timed to coincide with the destruction of the Golden Mosque 15 years earlier. I think the IJ was correct to say he most likely would have been involved or at least known about these events as a member of the AISSF. This is also consistent with the record materials showing that these lines of inquiry are essential in Sikh asylum claims. The State Department says you have to ask, it's good to ask about seminal political events in the Punjab, because many of these claims are fraudulent. I think it's fair for the IJ to inquire and be careful about these sorts of events, especially an event as critical to Sikh political history as the Operation Blue Star and this destruction that coincided with the commemoration of that. The second articulated thing is that he didn't know a lot about several other details about, or was vague about various details of his claim. He did not know, for example, the month of the 300th anniversary of the Sikh religion. Again, this is consistent with the sort of inquiry that is suggested by the State Department reports, suggests there should be knowledge about key events in the history. And here, when asked what month this 300th celebration, an event that involved 5 million people getting together to celebrate, he didn't know the month, which I think the IJ correctly and fairly found to be unusual. There are a couple other inconsistencies he missed on his, when he was cross-examined, he could not identify the years of two arrests correctly. He first gave them incorrectly and then corrected himself. The kind of third thing is that his key non-family corroborating evidence that IJ found was completely discredited. It was a letter in the record from Harmandir Singh listing the dates of his arrest and how long each arrest lasted. But when asked whether he even knew this person, he said he didn't. The letter, when it's read, seems to reflect not corroboration, but simply repetition of details provided to the letter writer from Gill. And in fact, the record shows that Harmandir had been cited in news reports as submitting false letters in support of asylum applications in the past. And finally, yeah. Can I ask about the demeanor? I'm just a little concerned that IJ say demeanor, bad, therefore denied. Was there something specific about the demeanor listed? I think the demeanor is very tied into some of these other things I've discussed, which is that in his direct testimony, he gave a pretty cogent, clear story, but on cross-examination, he seemed to have real trouble with dates and events, and especially with the events surrounding his second arrest. And I think in the record, AR 183 to 188 is where that testimony occurred. Say those numbers again. 183 to 188. He had a lot of long pauses. He was confused about specific dates. Did she note long pauses? I don't know if she did. She said he was shifting and bewildered. I guess bewildered could suggest a pause, but I don't think she used the word pause. Shifting and bewildered? I think if the Court simply used some magic words and that was it, that might not be enough. But here, I think the IJ really identified the core of what she felt was the problem. He had the story straight the first time, and the second time it seemed like complete confusion about a lot of these dates and events. And I mean, I think that's more cogent and specific than merely saying so-and-so had a demeanor that was not trustworthy. And I think those four grounds, one, the problem with the demeanor, the inaccuracies on key Sikh political events, and some inconsistencies on dates, as well as the sister issue, and the fact that this letter from his corroborating witness, Harman, or Singh, was completely discredited, together satisfy the standard of this Court for affirmance, which is identifying, articulating specific and cogent reasons for not finding the witness to be credible. All this should be looked against the background of the reports in the record, which suggest there's very little violence in this part of the world at this time. And that's... Well, we don't really get to that, do we? No. I mean, that's not... No, I mean, obviously that's not the reason, but I think that colored the kind of questioning that went on during this hearing. I think, for example, the State Department reports say there are many fraudulent claims, so it suggested lines of questioning, and I think that those lines of questioning were pursued, and when they weren't answered accurately, or were answered only vaguely, I think that supports the credibility determination. If there are no further questions, I ask the Court to affirm the holding of the IJ. Thank you, counsel. Just briefly, if I may touch on a couple of points raised by counsel. There was no specific finding by the IJ that the letter cited by counsel written by Herminder Gill was, in fact, not genuine. I believe that there was an adequate foundation laid, and to require a formal attestation from a letter writer in a third-world country that the information contained therein is based on their personal knowledge would seem to be unreasonable. But the Court can look at the circumstances explaining how the letter was obtained to determine the credit to give to the letter. Certainly, Your Honor, but I believe that Petitioner adequately explained that his father had gone to this gentleman and asked him for a letter concerning his involvement with the Student Federation and his experiences in India, and the letter writer specifically told him, come on back, I need to check it out with my subordinates, if you will. He came back two times. On the third time, he was provided the letter with the information contained therein. So it's... Wasn't there some discrepancy about who actually signed the letter? No, I believe the discrepancy, if any, was who received the letter in the United States. I believe it was faxed to some person at their place of employment, and then it was forwarded to Petitioner. But I believe an adequate foundation was laid by Petitioner there. The I.J. did not question the fact that he was detained or the fact that he was mistreated, and Petitioner gave specific, credible, detailed information about his experiences at the hands of police, of the police, rather, and we would submit that he is entitled to asylum. Thank you. Gil v. Gonzalez is submitted. And we'll hear Kiwal Singh v. Gonzalez.
judges: Kleinfeld, Rawlinson, Restani